UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| THE BANK OF NEW YORK MELLON, | Case No. 2:17-CV-2146 JCM (GWF) |
|---|---|
| Plaintiff(s), | ORDER |
| v. | |
| SOUTHERN HIGHLANDS COMMUNITY ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is defendant Southern Highlands Community Associations' ("Southern Highlands") motion for summary judgment. (ECF No. 48). Plaintiff The Bank of New York Mellon ("BNYM") filed a response (ECF Nos. 56), to which Southern Highlands replied (ECF No. 61).

Also before the court is BNYM's motion for summary judgment. (ECF No. 49). Defendants SFR Investments Pool 1, LLC ("SFR") and Southern Highlands filed separate responses (ECF Nos. 54, 58, 60), to which BNYM replied (ECF No. 62).

Also before the court is SFR's motion for summary judgment. (ECF No. 51). BNYM has not filed a response and the time to do so has passed.

**I.      Facts**

This action arises from a dispute over real property located at 4002 Trapani Place, Las Vegas, Nevada 89141 ("the property"). (ECF No. 1).

Richard Ocasio refinanced the property on December 6, 2004 with a loan in the amount of $168,992.00 from Countrywide Home Loans, Inc. ("Countrywide"). (ECF No. 49-1). Countrywide secured the loan with a deed of trust, which names Countrywide as the lender and

**James C. Mahan**
**U.S. District Judge**

beneficiary, and CRC Real Estate Services as the trustee. *Id.* On September 20, 2012, BNYM acquired all beneficial interest in the deed of trust via an assignment, which BNYM recorded with the Clark County recorder's office. *Id.*

On March 31, 2011, Southern Highlands, through its agent Alessi & Koenig, LLC ("A&K"), recorded a notice of delinquent assessment lien ("the lien") against the property for Ocasio's failure to pay Southern Highlands in the amount of $947.95. (ECF No. 49-2). On July 29, 2011, Southern Highlands recorded a notice of default and election to sell pursuant to the lien, stating that the amount due was $2,398.09 as of July 12, 2011. *Id.*

On December 30, 2011, Southern Highlands recorded a notice of trustee's sale against the property. (ECF No. 49-2). In an attempt to exercise its right of redemption, BNYM's predecessor in interest requested from Southern Highlands the superpriority amount of the lien. *Id.* Southern Highlands did not reply. *Id.*

On August 21, 2012, Southern Highlands recorded a second notice of trustee's sale against the property. (ECF No. 47-6). On September 19, 2012, Southern Highlands sold the property in a nonjudicial foreclosure sale to SFR in exchange for $10,100.00. *Id.* On September 24, 2013, Southern Highlands recorded the deed of foreclosure in favor of SFR with the Clark County recorder's office. *Id.*

On August 10, 2017, BNYM filed a complaint, alleging four causes of action: (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against Southern Highlands; (3) wrongful foreclosure against Southern Highlands; and (4) injunctive relief against SFR. (ECF No. 1).

Now, Southern Highlands, BNYM, and SFR have filed cross-motions for summary judgment, requesting that the court resolve whether the foreclosure sale extinguished the deed of trust. (ECF Nos. 48, 49 51).

**II. Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

**James C. Mahan**
**U.S. District Judge**

- 3 -

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.    Discussion

Southern Highlands, BNYM, and SFR move for summary judgment, requesting the court to declare that the deed of trust still encumbers the property. (ECF Nos. 48, 49, 51). Because BNYM has failed to provide sufficient grounds to set aside the foreclosure sale, the court will deny BNYM's motion for summary judgment and grant Southern Highlands and SFR's motions for summary judgment.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, a party must show that its claim to the property is superior to all others in order to succeed on a quiet title action. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

- 4 -

NRS 116.3116 *et seq.*[1] ("Chapter 116") allows an HOA to place a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Under NRS 116.3116(2), HOA liens have priority over other encumbrances. Nev. Rev. Stat. § 116.3116(2). However, some encumbrances are not subject to an HOA lien's priority, including "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

Chapter 116 then provides an exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Under Chapter 116, an HOA can enforce its superpriority lien with a nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

NRS 116.31166(1) provides that when an HOA forecloses on a property pursuant to NRS 116.31164, the following recitals in the deed are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2]  "The 'conclusive' recitals concern . . . all statutory prerequisites to a valid HOA lien foreclosure sale." *See Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*").  Nevertheless, courts retain the equitable authority to consider quiet title actions even when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of trustee's sale, and the recorded trustee's deed upon sale. *See* (ECF No. 49-2).  Further, the recorded foreclosure deed contains the necessary recitals to establish compliance with NRS 116.31162 through NRS 116.31164. (ECF No. 49-2); *See id*. at 1112.  Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale was valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

While NRS 116.3116 accords certain deed recitals conclusive effect, it does not conclusively entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting that NRS 116.31166 defeats, as a matter of law, actions to quiet title).  Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities.  This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id*.

---

[2] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

**James C. Mahan**
**U.S. District Judge**

1    BNYM contends that the foreclosure sale did not extinguish the deed of trust for three
2    reasons: (1) BNYM attempted to tender the superpriority portion of the lien; (2) Southern
3    Highlands foreclosed on the property pursuant to an unconstitutional statute; and (3) the
4    foreclosure sale was commercially unreasonable. (ECF No. 49).

   *i. Tender*

   BNYM argues that the foreclosure sale did not extinguish the deed of trust because BNYM tendered the superpriority portion of the lien. (ECF No. 49). The court disagrees.

   Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, BOA could have paid off the SHHOA lien to avert loss of its security . . ."). The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411; *Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC*, 373 P.3d 66 (Nev. 2016).

   BNYM claims that its predecessor provided adequate tender when it requested and offered to pay the superpriority amount. (ECF No. 49) (citing only an unpublished case in support of its contention). In doing so, BNYM's predecessor in interest improperly presumed that merely offering to pay the superpriority amount was sufficient to preserve the deed of trust.

   Instead, BNYM's predecessor in interest could have prevented the foreclosure sale by using available legal remedies—for example, paying the entire lien and then filing suit for a refund of the subpriority portion or seeking a temporary restraining order and a preliminary injunction. *See* Nev. Rev. Stat. §§ 14.010, 40.060; *see also SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund).

   After neglecting to use these remedies, BNYM now seeks restore the deed of trust despite its failure to follow the rules set forth in the statutes. *See Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc*., 366 P.3d 1105, 1114 n.7 (Nev. 2016) (citing *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888)) ("[W]e can see no way of giving the petitioner

the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day.").

Accordingly, BNYM's argument regarding tender does not entitle it to judgment as a matter of law.

### ii. Constitutionality of Chapter 116

BNYM argues that the court should grant summary judgment because, under *Bourne Valley*, Southern Highlands foreclosed pursuant to a facially unconstitutional state statute. (ECF No. 49); *see Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"). However, BNYM's reliance on *Bourne Valley* is misplaced.

In *Bourne Valley*, the Ninth Circuit held that Chapter 116 violated the Due Process Clause of the Fourteenth Amendment because it did not require a party foreclosing on a property to provide notice to a holder of any subordinate security interest. *Bourne Valley*, 832 F.3d at 1159. This conclusion was based on the interpretation that NRS 116.31168(1) did not incorporate NRS 107.090, which requires notice of default to any person with a subordinate security interest. *Id*.

When the Ninth Circuit ruled in *Bourne Valley*, there was no authority on the interpretation of NRS 116.31168(1). Left with the general doctrines of statute interpretation, the court declined to incorporate NRS 107.090 on the grounds that it would render NRS 116.31168(1) superfluous. *Id*. (citing *S. Nev. Homebuilders Ass'n v. Clark Cnty.*, 117 P.3d 171, 173 (2005)).

Since the Ninth Circuit's decision in *Bourne Valley*, the Nevada Supreme Court has provided its interpretation of Chapter 116, holding that NRS 116.31168(1) does incorporate NRS 107.090. *SFR Invs. Pool 1, LLC. v. The Bank of N.Y. Mellon*, 422 P.3d 1248, 1252 (Nev. 2018) (expressly refuting *Bourne Valley*). Under this ruling, NRS 116.31168(1) requires notice to subordinate interest holders and, thus, does not violate the Fourteenth Amendment. *Id*.

Both the Ninth Circuit and the Supreme Court have recognized, "a [s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975)); *see also Knapp v. Cardwell*, 667 F.2d, 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to

interpret, and, where they see fit, to reinterpret the states' legislation."). Accordingly, this court will follow the Nevada Supreme Court's decision and hold that Southern Highlands foreclosed on the property pursuant to a constitutional statute.

### iii. Commercial reasonability

Southern Highlands and SFR argue that the foreclosure sale was commercially reasonable because the sale price ($10,100.00) was not grossly inadequate given the conditions under which the property was sold and because BNYM has not presented any evidence of fraud, unfairness, or oppression. (ECF Nos. 48, 58).

BNYM argues that the court should grant its motion because the foreclosure sale for less than 5% of the property's fair market value ($215,000.00) is grossly inadequate and because BNYM can establish evidence of fraud, unfairness, or oppression. (ECF No. 49).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[3]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its

---

[3] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

1 foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a
2 showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528,
3 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure
4 sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d
5 989, 995 (Nev. 1963))) ("*Long*").

BNYM overlooks the reality of the foreclosure process. The amount of the lien—not the fair market value of the property—is what typically sets the sales price. Further, BNYM fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. BNYM claims that its predecessor in interest relied on A&K's representation regarding the applicable laws and how they affect a deed of trust. *See* (ECF No. 49). However, these representations are not relevant to the court's commercial unreasonableness analysis because A&K made those representations during an unrelated arbitration concerning different property. (ECF No. 49-2). Moreover, BNYM has not provided evidence showing that its predecessor in interest relied on those representations.

BNYM also claims that the foreclosure sale was unfair because the CC&Rs provide that a sale pursuant to the covenants on the property cannot extinguish a deed of trust so long as the violations of the covenant were made in good faith and for fair value. (ECF No. 49).

However, NRS 116.1104 provides that "[e]xcept as expressly provided in this chapter, its provisions may not be varied by agreement, and rights conferred by it may not be waived." Nev. Rev. Stat. § 116.1104; *see also Bayview Loan Servicing, LLC v. SFR Investments Pool 1, LLC*, No. 2:14-CV-1875-JCM-GWF, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017) (discussing the reasoning in ZYZZX2); *JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, 200 F. Supp. 3d 1141, 1168 (D. Nev. 2016) (holding that an HOA's failure to comply with its CC&Rs does not set aside a foreclosure sale, due to NRS 116.1104). Accordingly, language in the CC&Rs has no impact on the superpriority lien rights granted by Chapter 116.

Accordingly, BNYM's commercial reasonability argument fails as a matter of law, as BNYM failed to set forth sufficient evidence of fraud, unfairness, or oppression. *See, e.g., Nationstar Mortg., LLC*, No. 70653, 2017 WL 1423938, at *3 n.2 ("Sale price alone, however, is

never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

**IV.  Conclusion**

In light of the foregoing, BNYM has not provided sufficient grounds for the court to set aside the foreclosure sale.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Southern Highlands' motion for summary judgment (ECF No. 48) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that BNYM's motion for summary judgment (ECF No. 49) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that SFR's motion for summary judgment (ECF No. 51) be, and the same hereby is, GRANTED.

The clerk shall enter judgment accordingly and close the case.

DATED November 20, 2018.

_____
UNITED STATES DISTRICT JUDGE